James M. Carr,

      Plaintiff,

v.                                      **ORDER**

American General Assurance
Company,

      Defendant.

William J. Marshall, Esq., Midwest Disability, PLLP, 408 Northdale Boulevard N.W., Coon Rapids, MN 55448k, counsel for plaintiff.

Patrick H. O'Neill, Jr., Esq. and O'Neill & Murphy, 332 Minnesota Street, Suite W2600, St. Paul, MN 55101 and Jason M. Kuzniar, Esq. and Wilson, Elser, Moskowitz, Edelman & Dicker, 120 North LaSalle Street, Suite 2600k, Chicago, IL 60602, counsel for defendant.

This matter is before the court on the parties' cross-motions for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiff's motion and denies defendant's motion.

## BACKGROUND

This disability benefits dispute arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Plaintiff James Carr ("Carr") began work as a stock clerk for Northwest Airlines ("NWA") in October 1997. Throughout his employment, Carr participated in NWA's ERISA-governed welfare

benefits plan ("Plan") that was underwritten and administered by defendant American General Assurance Company ("American General").

The Plan provided long-term disability ("LTD") benefits to an insured who became totally disabled. An insured was totally disabled under the Plan if a disability prevented him "from doing all the material and substantial duties of [his] own occupation" during the "Elimination Period"[1] and the following three years. (A.R. at 6, 24.) Thereafter, an insured was totally disabled only if the disability prevented him from "doing any occupation or work for which [he was] or could reasonably become qualified by training, education or experience." (Id. at 7, 24.)

LTD benefits payments commenced under the Plan if an insured became totally disabled, remained totally disabled throughout and beyond the Elimination Period and "exhausted sick leave benefits, occupational injury leave benefits, vacation pay and any base pay continuance for which [he was] eligible due to disability." (Id. at 8, 26.) The Plan required written proof of loss to be sent to American General "within 90 days after the start of the period for which [it] owe[d] payment." (Id. at 15, 32.) Late proof of loss, however, did not affect the claim if: "(1) it was not possible to give proof within the required time; and (2) proof is given as soon

---

[1] "Elimination Period means the period of time [an insured] must be disabled before benefits become payable." (A.R. at 5, 23.) The Plan contained a ninety-day Elimination Period. (Id. at 2, 22.)

as possible; but (3) not later than 1 year after it is due, unless the claimant is not legally competent." (Id.) American General reserved "the right to determine if proof of loss [was] satisfactory." (Id.)

On September 7, 2001, Carr injured his lower back at work. As a result, Carr received temporary total disability ("TTD") wage loss workers' compensation benefits under Minnesota law from September 13 until October 18, 2001.[2] Carr returned to work from October 19, 2001, until January 15, 2002, at which time he again left work and began receiving TTD benefits. On May 27, 2003, Carr was diagnosed with a class four disabling condition, which required lower back surgery on September 29, 2003. (Id. at 152, 215.)

After Carr exhausted his TTD benefits, NWA placed him on an unpaid leave of absence ("LOA") beginning on December 10, 2003. Carr returned to work in a limited capacity from December 15 until December 18, 2003, when he again went on an unpaid LOA. Carr once more returned to work on February 4, 2004, but was forced to take an unpaid LOA on April 8, 2004, because of continuing health problems stemming from the September 2001 injury. Thereafter, Carr continued on an unpaid LOA.

Carr began an accommodations period with NWA in August 2005. (Id. at 45.) As part of that period, NWA first conducted an

---

[2] Liberty Mutual provided NWA's workers' compensation insurance coverage.

3

accommodations assessment to identify whether any reasonable accommodations would permit Carr to continue as a stock clerk. NWA determined on August 12, 2005, that no such accommodations existed. NWA then provided Carr with alternative duty exploration ("ADE") services to locate another suitable job within NWA. Those services ended without success on November 17, 2005, and Carr's employment with NWA was terminated.

Meanwhile, in July 2005, Carr had received a seventeen percent permanent partial disability ("PPD") rating. (Id. at 160.) Carr received PPD workers' compensation benefits payments in two lump sums on October 27, 2005, and November 21, 2005, totaling $15,300. (Id. at 37.) In addition, pursuant to Carr's request, NWA had paid his final benefit accruals from NWA - including 19.43 vacation hours - on September 16, 2005. (Id. at 91.)

American General received Carr's claim for LTD benefits on February 14, 2006. (Id. at 49-58.) On May 24, 2006, American General denied Carr's claim as untimely. American General noted that Carr's last day of work was April 8, 2004, he "exhausted all available accrual time on the books" on April 13, 2004, and he satisfied the Elimination Period on July 8, 2004. Thus, under the Plan, proof of loss was due by October 6, 2005, which was one year and ninety days after the date on which American General would have owed payment. (Id. at 157-59.)

Carr appealed the denial on May 31, 2006, arguing that he properly applied for LTD benefits within one year and ninety days of receiving his final vacation pay in September 2005. (Id. at 160.) On September 22, 2006, American General affirmed its initial decision, indicating that Carr exhausted his "accruals" on April 8, 2004, and that although he received his final payout in September 2005, "the exhaustion of accrual benefits occurred on April 8, 2004," and his receipt of the September 2005 check had "no bearing on the date [his] accruals ended and would have no relevance in the review of [his] appeal." (Id. at 201-03.) Accordingly, American General determined that the Plan required Carr to apply for LTD benefits on or before October 5, 2005. (Id. at 203.)

On October 6, 2006, Carr appealed again, maintaining that he could not have applied for LTD benefits before either his July 2005 PPD determination or conclusion of the accommodations period and that he was paid "accruals" and "benefits" in September or October 2005. (Id. at 208-09.) American General affirmed its initial decision on November 1, 2006, and noted that while Carr was on unpaid LOA after April 8, 2004, he was not covered under the Plan and would not have been eligible for LTD benefits as of July 2005. (Id. at 210.)

Carr filed a final appeal on November 15, 2006, and American General rejected the appeal on January 12, 2007. In the letter rejecting Carr's appeal, American General indicated that NWA had:

5

> noted that [Carr] requested a "vacation payoff" for the period ending September 9, 2005, but that [he] had been on leave of absence since April 8, 2004. In addition, [NWA had] noted that this was for "final accruals" that would have been owed in 2005[3] had it been paid correctly. As indicated, [Carr was] not receiving sick leave benefits, occupational injury leave benefits, vacation pay or any base pay continuance for which [he] was] eligible due to disability at the time [he] stopped working. In addition, [American General had] verified that [Carr was] not receiving occupational injury leave benefits. [American General] contacted [Carr's] workers compensation carrier and benefits ended on December 9, 2003 with a lump sum settlement on November 21, 2005.

(Id. at 220.) Accordingly, American General reaffirmed that April 8, 2004, was Carr's date of disability and that his February 2006 claim for benefits was untimely. The letter concluded that Carr had exhausted his administrative remedies and could bring suit under § 502(a) of ERISA. (Id. at 221.) Carr filed an action in state court on February 14, 2008, and American General timely removed the case. Now before the court are the parties' cross-motions for summary judgment.

---

[3] This appears to be a typographical error, and should read 2004. (See id. at 304.)

## DISCUSSION

### I. Standards of Review

#### A. Summary Judgment Standard

Summary judgment may be appropriate where the court reviews an administrative decision to deny or limit benefits under an ERISA plan. See Ortlieb v. United HealthCare Choice Plan, 387 F.3d 778, 781-84 (8th Cir. 2004). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id. at 322-23.

**B.   Review of American General's Decision**

Where a plan administrator maintains discretionary authority to determine eligibility, the court generally reviews an administrator's decision to deny benefits for an abuse of discretion.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  The abuse-of-discretion standard, however, is triggered only if the plan contains "explicit discretion-granting language." McKeehan v. Cigna Life Ins. Co., 344 F.3d 789, 793 (8th Cir. 2003) (quotation omitted).  Where a plan does not grant discretionary authority, the court applies a *de novo* standard of review.  Firestone, 489 U.S. at 115.

Here, American General expressly "reserve[d] the right to determine if proof of loss [was] satisfactory."  (A.R. at 15.) This unambiguous discretion-granting language does not distinguish between the substantive and procedural adequacy of the proof of loss, and the court reviews American General's decision for an abuse of discretion.  Cf. Vesaas v. Hartford Life & Accident Ins. Co., 981 F. Supp. 1196, 1199 (D. Minn. 1996) (identical plan language confers discretion over substantive benefits denial). Under that standard, the court must affirm a plan administrator's decision if a "reasonable person could have reached a similar

decision, given the evidence before him, not that a reasonable person would have reached that decision." Rutledge v. Liberty Life Assur. Co. of Boston, 481 F.3d 655, 659 (8th Cir. 2007) (internal quotations omitted). To be reasonable, a decision must be based on substantial evidence. Wise v. Kind & Knox Gelatin, Inc., 429 F.3d 1188, 1190 (8th Cir. 2005). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Norris v. Citibank, N.A. Disability Plan (501), 308 F.3d 880, 884 (8th Cir. 2002).

Similarly, where a plan contains uncertain terms, a "court will not disturb the plan administrator's interpretation of the plan, as long as it is reasonable." Admin. Comm. of the Wal-Mart Stores, Inc. v. Gamboa, 479 F.3d 538, 542 (8th Cir. 2007) (citation omitted). The "discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made." Ratliff v. Jefferson Pilot Fin. Ins. Co., 489 F.3d 343, 348 (8th Cir. 2007). A court, however, will not "allow claimants to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 1000 (8th Cir. 2005) (en banc). Thus, a plan administrator's notice of

denial of benefits must set forth the "specific reasons for such denial in a manner calculated to be understood by the participant." Id. at 999.

## II. Merits

Carr asserts that American General abused its discretion by determining that his application for LTD benefits was untimely. Specifically, Carr argues that the workers' compensation benefits payments and ADE services that ended in November 2005 were "occupational injury leave benefits," and that his vacation pay was not exhausted until the September 6, 2005, payout.

### A. Occupational Injury Leave Benefits

American General first argues that workers' compensation benefits are not occupational injury leave benefits. A court considers several factors to determine whether a plan administrator's interpretation of uncertain terms is reasonable, including

> whether [its] interpretation is consistent with the goals of the plan, whether [its] interpretation renders any language of the plan meaningless or internally inconsistent, whether [its] interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether [it has] interpreted the words at issue consistently, and whether [its] interpretation is contrary to the clear language of the plan.

Finley v. Special Agents Mut. Benefit Assoc., Inc., 957 F.2d 617, 621 (8th Cir. 1992). An ERISA-governed plan is construed "by giving the language its common and ordinary meaning as a reasonable

person in the position of the plan participant, not the actual plan participant, would have understood the words to mean." Hughes v. 3M Retiree Med. Plan, 281 F.3d 786, 790 (8th Cir. 2002) (quotations omitted). Further, a court should read each plan provision "consistently with the others and as part of an integrated whole." Barker v. Ceridian Corp., 122 F.3d 628, 638 (8th Cir. 1997) (quotation omitted).

Workers' compensation benefits are benefits paid "to an employee for injuries occurring in the scope of employment." Black's Law Dictionary 1637 (8th ed. 2004). As such, workers' compensation benefits are plainly "occupational injury benefits." The Plan, however, contains the additional requirement that the benefits be "leave benefits." A "leave" is reasonably understood as an "[e]xtended absence for which one has authorization." Id. at 910. Thus, "occupational injury leave benefits" are benefits paid while an employee is on an authorized extended absence because of an occupational injury. An employee, however, need not be on leave to receive workers' compensation benefits. See, e.g., Minn. Stat. § 176.101, subdiv. 2. Therefore, the court determines that the plain terms of the Plan exclude workers' compensation benefits from "occupational injury leave benefits."

This interpretation is supported by other Plan provisions. The monthly LTD benefits under the Plan are determined by subtracting "Other Income Benefits" from the otherwise applicable

11

benefit amount. (A.R. at 10.) Other Income Benefits include "[t]emporary and permanent disability benefits provided under any Worker's Compensation or Occupational Disease Law." (Id. at 6.) A Plan interpretation requiring exhaustion of workers' compensation benefits before LTD benefits became payable would render the Plan's setoff requirement for workers' compensation payments surplusage. See Harris v. Epoch Group, L.C., 357 F.3d 822, 825 (8th Cir. 2004) (ERISA plan interpreted to avoid rendering provisions superfluous). To avoid this interpretation, and consistent with the plain meaning of the Plan, the court determines that workers' compensation benefits are not "occupational injury leave benefits." Accordingly, the November 21, 2005, partial lump sum payment of PPD benefits did not establish the date from which to determine the beginning of the period for which American General owed payment under the Plan.

American General further contends that the ADE services are not occupational injury leave benefits because the term "benefits" as used by the Plan is limited to monetary payments. Generally speaking, a benefit means a mere "advantage" or "privilege." Black's Law Dictionary 166 (8th ed. 2004). The Plan, however, consistently uses the term "benefit" to refer to a payment from NWA, American General or state and federal government. (See A.R. at 5-6 (defining "monthly benefit" and "other income benefits").) Moreover, "occupational injury leave benefits" must be interpreted

12

consistently with the Plan's surrounding reference to "sick leave benefits, ... vacation pay and any base pay continuance," which all refer to financial payments, not a general advantage or privilege. See Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 175 (D.C. Cir. 2006) (applying *noscitur a sociis* and *ejusdem generis* contract interpretation canons to ERISA plan). Therefore, the court determines that the use of "benefits" in "occupational injury leave benefits" means "[f]inancial assistance that is received from an employer, insurance, or a public program (such as social security) in time of sickness, disability, or unemployment." Black's Law Dictionary 167 (8th ed. 2004). Accordingly, the ADE services were not "occupational injury leave benefits" because they did not provide financial assistance, and the November 17, 2005, termination of those services did not constitute exhaustion of Carr's occupational injury leave benefits.

### B. Vacation Pay

It is undisputed that Carr received a final payout for his accrued vacation benefits on September 16, 2005. In denying Carr's application for LTD benefits, American General interpreted the Plan's requirement that Carr exhaust his "vacation pay" to mean that he exhaust his "accruals" for vacation pay. The plain language of the Plan does not support such an interpretation, and American General does not pursue that construction of the Plan here. Instead, American General argues that substantial evidence

13

in the record shows that the September 2005 vacation payout was a mistake and that the payment should have been made in April 2004. The only record evidence supporting American General's claim is a September 5, 2006, internal email related to its investigation of Carr's application in which Jackie Mattison wrote to Tracey Mazerolle that

> I can only tell you what they are telling me and the pay that [Carr] received in 9/05 was a pay out of what he would have been owed in 2004 had it been paid correctly. If you have any further questions I would suggest that you make contact with NWA yourself so that you can get the answers to the questions that you want.

(A.R. at 200.) This conclusory statement was not supported by any evidence or an explanation that would permit a reasonable mind to determine that Carr's September 2005 vacation benefits payout was a mistake and should have occurred in April 2004. Rather, the more likely inference is that Carr's accrued benefits would have been paid out at the end of the accommodations period when his employment with NWA officially terminated had he not requested payment earlier. Therefore, American General's determination that Carr's vacation benefits should have been paid out in April 2004 is not supported by substantial evidence, and September 16, 2005, is the proper date from which to assess the timeliness of Carr's application for LTD benefits.

Anticipating this conclusion, American General argues that Carr's application is still untimely because his February 2006

14

application fell beyond the ninety-day deadline and he has not shown that it was impossible to give proof of loss before that deadline. The parties agree that Minnesota's notice-prejudice rule applies to the Plan. See UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 369 (1999). Under that rule, where a plan's notice provision is not a condition precedent to coverage, an insurer may not invalidate a claim as untimely unless it shows that it was prejudiced by the insured's late filing. See Weyrauch v. Cigna Life Ins. Co., 416 F.3d 717, 722 (8th Cir. 2005) (citing Ryan v. ITT Life Ins. Corp., 450 N.W.2d 126, 130 (Minn. 1990)); Winthrop & Weinstine P.A. v. Travelers Cas. & Sur. Co., 993 F. Supp. 1248, 1256 (D. Minn. 1998) (condition precedent).

In this case, the Plan's provision for a one-year cushion if it was not possible to provide timely proof of loss and requirement that proof be given as soon as possible do not set conditions precedent to coverage. Cf. Weyrauch, 416 F.3d at 722 (Minnesota's notice-prejudice rule applies to Policy stating "claim will not be invalidated or reduced if it is shown that written notice was given as soon as was reasonably possible"). Therefore, under the Plan, the notice-prejudice rule applies to claims filed after expiration of the initial ninety-day deadline but before expiration of the additional year. American General does not argue that it was prejudiced by the roughly two-month interval between expiration of the initial ninety-day deadline and Carr's February 2006

15

application. Accordingly, the court determines that Carr's proof of loss was sufficient under the Plan, and summary judgment in his favor is warranted.

**CONCLUSION**

Based on the above, **IT IS HEREBY ORDERED** that:

1. Carr's motion for summary judgment [Doc. No. 18] is granted;

2. American General's motion for summary judgment [Doc. No. 24] is denied; and

3. This matter is remanded to American General for a determination on the merits of Carr's application for LTD benefits.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 10, 2009

s/David S. Doty
David S. Doty, Judge
United States District Court
